This Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Anne Bradley Jorgensen presides. Please be seated. Your Honor, this is the 3rd case of the morning, Fall 2, 11-08-05. The people of the State of Illinois v. Peter Hommerson. On behalf of the L1, Ms. Kathleen Hamel. On behalf of the people, Mr. Jay Hoffman. Good morning, Your Honor. Good morning. Good morning, Counsel. I'm Kathleen Hamel from the State Appellate Defender's Office. Representing the Petitioner Appellant, Peter Hommerson. This Court has asked us this morning to direct our attention to the single question of whether, if you find that Mr. Hommerson's petition was dismissed on an improper basis, you have the authority to determine whether the petition is frivolous or a patent without merit for the first time on this appeal, or whether this case has to be remanded for second stage proceedings. I don't believe that was the only question. I mean, it was basically a, the merits of the case are still open. Oh, okay. I mean, we want to talk about the merits also, but basically it's, if this Court were to choose to follow Turner as opposed to Carr, what do we do? That's the question. If we follow Carr, then it's real simple. Well, okay. Well, addressing the merits, the reason that we believe that this Court should follow Turner as opposed to Carr is because it, because, well, Turner is actually following Henderson, and what Henderson does is it looks at the language of the statute, which is the section 122-2.1, which is specifically the, you know, that it provides, it authorizes the Court to dismiss, summarily dismiss a petition if it makes a finding that the petition is frivolous and patently without merit, or patently without merit. And Henderson found, and Turner also agreed, that a finding that, whether or not an affidavit is notarized is not a question that is encompassed in the requirement that there be a finding made of frivolous or patently without merit. Isn't it whether the petition is verified? Whether the, well, there are two affidavit requirements. One of them is 122-1B, which is the one that requires the defendant to verify the petition with his affidavit. The second one is 122-2, which requires the defendant to submit any affidavits that he submits as support for his allegations to be notarized. In this case, the defendant's petition, none of the, well, none of the affidavits that were submitted under 122-2 were notarized, and we do concede that the petition itself ends rather abruptly. It almost appears to have the last page missing. But as a practical matter, it appears that what the petitioner did was that he submitted the, he prepared all the affidavits that he submits are also his own affidavits. They all attest to the very same facts that he's alleging inside of his petition. And he is, apparently he thought that functioned as a verification of the whole petition, of the factual allegations of the petition. And as a practical matter, had they been notarized, they would have, because they cover everything that he alleges, everything. Isn't an unverified post-conviction petition under 122-1 frivolous by definition? Not, no, I think not. Under 122-1, it's a correctable error, is what it is. And what Henderson says is that defects of this sort, procedural, technical defects, should be corrected. You know, the defense certainly is required to correct them at the second stage, because at the second stage, counsel has been appointed, and then the defendant has a fighting chance of being able to at least understand what the act requires him to do and to comply with it. At the first stage, once the defendant makes a filing, the only question that is before the court is whether taking everything in the petition is true, which, well, let me finish my sentence, taking everything that's in the petition is true, the defendant has stated the gist of a constitutional claim. Okay. How does the court determine whether or not everything is true when the affidavit isn't sworn to? Well, at the first stage, the court does not make that determination. The court determines whether or not there's a gist of a constitutional claim. Yes, and how can they make that determination with a defendant who's in prison for 42 counts of fraud and doesn't swear to his affidavit? Because the act requires that the court assume all the... Where do you find that? Well, I'm sorry, not the act, the case law that supports this, that the court is supposed to take all the allegations. Can we also rely on the statute that says that those allegations must be verified? Yes, but, again, this can be addressed, whether or not they are verified, at the second stage. If you think about it, it makes sense. Well, how do we get to the second stage if we don't have verified facts upon which to determine whether there's a gist at the first stage? Well, the statutory scheme of the Post-Conviction Hearing Act is constructed to allow for the... Well, it recognizes, and I'm actually referring to the analysis in Hodges or the explanation in Hodges, it recognizes that people who are incarcerated and certainly not learned in law and have very limited access to materials and to things like notaries cannot reasonably be expected to put their claims in a form. But on the other hand, it recognizes that a lot of things that are filed are screamingly, patently frivolous. And so what they've done is they've created a stage, a step, that allows the court, without any input from the parties, to look at that and to weed out the ones that, even if it's true, even if everything the guy says is true, it still would not merit relief. It would be impossible. And so there you have it. Whereas a lack of a verification doesn't mean that something isn't true. So then why did they put that in the Act? Why did they require a whole special Act for post-convictions with respect to verification versus a civil 109? Why is there a difference? I believe it's because at the second stage it becomes important because there, rather than stating the gist of a claim, which is a very low standard, at the second stage the defendant must make a substantial showing. And so we require more at the second stage. And we also give the defendant more of a chance to do that by appointing counsel. Otherwise, the second stage actually becomes redundant of the first stage, which wouldn't really make sense. So at the second stage we now have an officer of the court making representations to the court and representing the defendant like you would in 109. At the first stage we don't have that. So isn't it even that much more important at the first stage to have a petition verified? I think not only because at the first stage we aren't looking to whether or not the allegations are true. We are assuming they are true. The court is to assume that they are true. That's the point. What's your authority for us to assume that they're true? Taking them as true. Taking as true. Under the same statute that requires those allegations to be verified. I mean, I have to ignore something. Why and under what authority can I ignore a portion of the statute? I think what it is is we have to read the statute as a whole and recognize that these procedural matters arise at the second stage, are addressed at the second stage. At the first stage we address simply this is a way of handling the heavy post-conviction docket. We allow the court to simply say, assuming everything is true, ignoring everything else about the petition, just assuming that this is true, is there any reason to move this on to use the resources of the court to appoint an attorney and to have hearings? So you submit that this is procedural? Yeah, I do. If we want to weed out or speed up the docket on the post-conviction petitions, wouldn't a good way to be to dismiss them if they aren't verified as the act sets out? The problem with that would be that it would be unfair because people who are in prison, as Hodges recognizes, simply cannot be expected to do this. In some of the prisons it's virtually impossible to get hold of a notary, let alone in time. And our clients often don't even understand what that means, what it means that they have to do things like this. This is one of the reasons why our clients continue to put 1-109 at the bottom of many filings. If they're representing themselves after courts have held, that's not sufficient. Well, if they're representing themselves, aren't they held to the same standard as an attorney would? Except we have to recognize the reality that we don't give them any option but to represent themselves at the first stage if they are indigent. Whereas when we're in a trial court or something and they're indigent, they have the option to be represented by counsel. So the act is conserved with fairness. Are there any more questions about that aspect of the argument? I can address your question then. Okay. Your Honor's directed us to three cases, Cleveland, Quigley, and Inman. Cleveland and Quigley were decided by this court. And Cleveland is the oldest of the two. And it holds that if a circuit court's summary dismissal order is procedurally correct, by which you, under 122-2.1, which means was it dismissed within 90 days without any prosecutorial input, in other words, a procedure followed by the court itself, but it was based on an improper ground, then this court can affirm on any ground that is presented on the record, including the court's own finding that the petition was frivolous or patently without merit, regardless of whether or not that was made for the trial court. Quigley seems to agree with Cleveland. It was not presented with a procedural defect, however, which is ‑‑ I'm sorry. Cleveland was presented with a situation where the judge may or may not have. The argument on appeal was that the judge did not hold the petition to the proper standard. Instead of finding that it was frivolous, the court also said that the defendant had failed to make a substantial showing, which would be the second stage. And so on appeal, what this court did is found that there is ‑‑ it didn't matter because under either standard, the statute failed. Certainly it failed under the frivolousness statute, our standard. Along the way, this court observed that Cleveland was correct because in this court's view, where an order has been entered by a judge using an improper ‑‑ that violates the procedure, dictated by 122-2.1, in other words, on the 91st day, for example, rather than the 90th, then the order is actually void. And so there's no order to review. However, if the court makes a ruling on an erroneous basis, it can be affirmed on any ground. The third case that was cited by this court, People v. Inman, took a completely different route and reached the opposite conclusion. Inman, the court ‑‑ I believe it was that the judge thought that a petition was successive when in reality it was not. So it was a procedural thing that had nothing to do with frivolousness. In Inman, the court read 122-2.1 as authorizing the circuit court to summarily dismiss a petition only if within 90 days of its filing and docketing, there was a finding made that it was frivolous. Is the distinction between Quigley v. Cleveland on one side and Inman on the other side that Cleveland v. Quigley at least addressed somewhat the merits and Inman, the trial court, did not address the merits? That is, yes, that's part of the difference. And that might be part of what guided the analysis in the two cases. Because in Cleveland v. Quigley, the court did not look at what 122-2.1 authorized it to do, as we are this morning. In Inman, the court did. And in Inman, the court said this only authorizes a circuit court to make a ruling within 90 days of the filing based on frivolousness. And where that doesn't happen, the case must proceed to second stage proceedings. And they cite Harris for that, which was an Illinois Supreme Court case where the court, the trial court, had mistakenly thought that it had to hold a petition in abeyance during the pendency of the direct appeal. Because the defendant filed while the direct appeal was still pending. And that's not true. And 90 days ran. And despite the fact that the court made a completely honest mistake, it was held that the petition had to proceed to the second stage. Inman, with all due respect to this court, Inman is actually more consistent with the body of existing post-conviction law than is Quigley or Cleveland. As I've just been saying, if you look at the language of the statute itself, as Inman did, it definitely only, it does not refer to looking for procedural defects, that the court should determine whether or not a procedural defect is present or anything like that. It only refers to frivolousness. Second, it's actually consistent with Henderson, because, you know, which is the case where Harris is talking about, about the affidavits, because both focus on the language of 122-2.1 and recognize that a procedural defect made by the defendant is not a proper ground. I would like to point out here that the word procedural comes up in different ways here. In Henderson, the court is talking about procedure that the defendant does or does not do. In Cleveland, Quigley, the court is talking about the procedure that the court does or does not, you know, whether or not the court has complied. I think perhaps most important is that the relief that was granted in Inman is consistent with the relief that was granted in Beauclair, which is the untimeliness, the case where the court found that untimeliness is not a proper ground for a first-stage dismissal. And Beauclair is analogized to, of course, a lot of the cases about affidavits. In Beauclair, there were three defendants. One of them, or three cases, I'm sorry, consolidated. In the first one, the trial court found the petition to be frivolous, but the appellate court reversed solely because it was untimely. In the other two cases, the trial court found the petitions to be frivolous, and the appellate courts reversed based on because they found that untimely. No, I'm sorry, I've got it wrong. In the other two cases, the trial courts found the petitions to be untimely, and the appellate courts reversed because they found untimeliness to be an improper ground. In Beauclair, the Supreme Court agreed with the appellate courts in the last two cases. And when the court gave relief, what it did was in the first case, because the trial court had made a finding of frivolousness, the court remanded the case to the appellate court to review the frivolousness finding. In the other two cases, the court merely affirmed the appellate court's ruling, which was to remand the cause for second-stage proceedings, for further proceedings. So the appellate courts had not done a frivolous assessment, and the Beauclair court also did not. Now, the court did not explain the relief. In this case, the court didn't do a frivolous assessment. Right, right. Unlike Carr. Correct. While the Beauclair court did not explain the relief that it granted, the court did say, Again, we make no comment on the sufficiency of the allegations raised by any of the defendants in the respective petitions. This was the court's implied acknowledgment. It is not appropriate for a court of review. Let me ask you a question, just because your time is up, and I want to just sum this up. I think Justice Burke began by asking you, well, we asked you to address these cases, and I think he began by asking you, if we agree with Turner, what do we do with this post-conviction petition? Do we address the frivolous and patent without merit here at the appellate court, or do we remand it to the trial court for second stage, or to address that issue? I would urge this court to follow the reasoning in Inman, to abandon the approach taken in Cleveland, and to remand this clause for second-stage proceedings. Well, the approach in Cleveland wasn't wrong, because in Cleveland it was a res judicata finding, and in Blair, the court said frivolous and patent without merit encompasses res judicata. So Inman and Cleveland are not opposite each other. That's true. That's true. Quigley is a middle ground that's a little procedurally skewed. Yes. That is true. It's got more to do with there is the language about on any ground, but it really wasn't analyzing the question that's before this court this morning. Thank you, guys. Good morning, Your Honors. Counsel, may it please the court, I am Jay Huffman of the Appellate Prosecutor's Office. It's my pleasure to be before this honorable court representing the people of the state of Illinois. I'll go right into the last question, the question that you asked us specifically to address, and I think Justice Burke is correct that one of the distinctions between Cleveland and Quigley and Inman is that in Inman there was, well, I'd go beyond I think maybe what you were saying, there was no analysis of the petition in and of itself. The judge determined there that it was a second or subsequent petition, and therefore it had not shown that it was valid under cause of prejudice and did not address anything with regard to the petition. So that distinguishes it from Cleveland and Quigley right off. But I think there's a more important distinction. Inman does not at all criticize or hold opposite of what Cleveland and Quigley say. In Cleveland, the trial judge made a determination that a particular claim, that the claim was res judicata. This court said, no, it's a different claim than was raised before, and therefore it's not res judicata. But because we know of the longstanding, well-recognized principle that we are not looking at the reasons for a judgment but at the judgment, therefore we can go on because this ruling was made within 90 days and address patently frivolous or patently without merit. I would say I would disagree with you slightly, Justice Burke. I would say Quigley is basically the same thing. Now, the issue was different in Quigley. In Quigley, there was some question about whether when dismissing it as frivolous and patently without merit, the judge said, well, it's without merit, but he also, I believe it was he, the judge also said it doesn't raise a substantial claim of a constitutional violation. This court first analyzed a Supreme Court case in which actually the Supreme Court said, well, it's no problem because the judge also said without merit. But this court said, regardless of that, and cited Cleveland, we go on and determine that it's frivolous and patently without merit on appeal. We can do that. So those two cases hold that it's permissible for this court, and that's this court's precedent, and it's not been overruled or questioned by any panel of this court, hold that if there's a valid ruling on a petition within 90 days at the first stage, you can analyze any ground supported by the record and affirm that ruling. Correct. How does that comport with the statute? It comports perfectly because you are sitting in judgment of a, in Quigley, it's clear, you are sitting in judgment of a ruling that was made within the procedural 90-day time. Let's say you sit for a minute, they had nothing to do with the merits. So we'd be the first court then passing on whether the petition was frivolous and patently without merit within 90 days. Well, within 90 days, I don't think it matters. You're sitting... Well, the statute says that that decision on frivolous and patently without merit has to be made within 90 days. Yes, but the case law says that you sit in judgment of the ruling, the dismissal, not the basis for it. Even if the court doesn't expound on the basis other than the petition or the petition wasn't verified. That's correct, Your Honor. And now to get to the obvious distinction in Inman, Inman never said we cannot look at something that wasn't ruled upon the law. That wasn't ever the issue in Inman. The issue in Inman was what to do when it gets sent back down. No one asked the court. The court didn't ask itself to go on and look at frivolous and patently without merit. The defendant there said, and the defendant says, when this is remanded, because it wasn't ruled on within 90 days, as it must be by the Act, when it's remanded, it goes to second stage. And that's what Inman said. Inman never said we cannot look at anything that wasn't ruled on below. It wasn't asked to. Counsel argued that the remand in Beauclair would be consistent with her argument here today on the various cases in Beauclair. Again, I did not look at Beauclair in preparation of this particular issue, but I don't think Beauclair overrules this court's precedent in Cleveland and Quigley. I don't think it addresses it. I don't think it addresses it. What I'm saying is the court remanded one case for one reason and then two cases for another different reason based upon the fact that the courts had passed on frivolous and patently without merit in the trial court. Well, it did that, but it never, again, just like Inman, it never said we can't look at frivolous and patently without merit. That's not for us to do. Those are cases, Beauclair is like Inman in that it's remanding it and telling the circuit court what stage it must be at. But this court certainly sits in review now as in Quigley and in Cleveland of a decision that was properly made within 90 days and the well-recognized law is that you don't look at the basis for a judgment, you look at the judgment and can affirm it for any grounds in the record. Your point is Inman was not decided on the merits within 90 days regardless if it was an incorrect standard or an incorrect basis. In Inman, no decision on the petition within 90 days. In Inman, the trial court said, hey, this is your fourth, I think, petition, but it was the first one after the resentencing. So there the trial court said you didn't establish a basis for this to be a successive. Therefore, I'm dismissing it, but I'm not dismissing it on its merits within 90 days. I'm not dismissing it on anything that has to do with it. Right, I agree. Regardless of the, you know, not being. Is that the distinction? That's one of my points, Your Honor. My other point, which I think is the major point, Inman does absolutely not stand for the proposition in contrary to the well-recognized principle this court spoke of in Cleveland that you look at the judgment, not the basis for the judgment. It simply never said, as Beauclair does not, we can't look at these other matters. The defendant in Inman said, hey, when this goes back down, it's got to go to second stage. He never said, no one ever asked that court to look at the frivolous and patently without merit question. This, of course, is moot if we choose to refer on the Carr basis of the trial court. And it is moot, Your Honor, I would assume, because this court should follow its well-reasoned precedent in McCoy and Carr, which, in fact, as we've laid out in our brief, was really not, although this court opined, with respect, Your Honor, this court opined in Turner that it was not going to follow those and follow Henderson instead. That was obredicta. That was simply not, there was no reason for this court to reach out to an issue that was not before it and say, oh, and those two previous cases we had where the issue was before it were wrongly decided because those two cases, Carr and McCoy, were first stage. And Turner was not. Turner was second stage. Let me ask you this. Can a petition present the gist of a meritorious constitutional claim without a 122.1 verification? Absolutely not, Your Honor. And that's why Henderson, which has now been followed by the Fourth District in Terry and by several other decisions in the First District, that's why Henderson was wrongly decided. Henderson seems to take the view that the 122.1 verification is not an inherent component. We disagree with that. We think it's as big an inherent component as are the 122.2 affidavits. We got into a bit before the court was asking defense counsel about taking facts on their face. I believe if you look at the case law, and I don't think it's in the statute itself, but if you look at the case law, it says all well-pleaded facts must be taken as true. And I can go then to Hodges, which speaks to the fact, and we all know that there are two inherent components in a valid postconviction. One is a legal basis, and Blair says that a legal basis can be defeated by res judicata or forfeiture. And the other is a factual basis. Hodges says, well, a factual basis is there if it's not fanciful. I would submit that Blair allegations without any support for them, without any verification by affidavit, is fanciful. What if all the factual allegations in a petition that did not have a 122.1 verification or affidavit were supported by 122-2 affidavits? It would still be... So just because that little stack, that little notary wasn't on there, even though you had notarized affidavits that supported every fact in the original petition, it would still be, you'd still take it as basically not true because it's not verified. Collins teaches us that there are different purposes. Now, they're related purposes because they're related to the factual part of it. But Collins teaches us that there are different purposes. The purpose of a 122-1 verification affidavit is to establish the truthfulness of the claims and to establish that it's brought in good faith. Without that, I submit that the court cannot, the trial judge is not required to take those allegations as true because they are not well pleaded. How do you respond to your opponent submitting, hey, these guys are in prison, they're not going to be able to find a notary, and that's why it's not required until the second stage and you're making an attorney? In three ways, I guess. First of all, this court has certainly seen circumstances where the petition is not notarized and yet the notice of filing is notarized or something else is notarized. You know, it's not always true. Second of all, to the extent that they don't have a notary, and I realize that unlike in 122-2, dash 1 doesn't say or explain why it's not notarized. But I would submit that they could do that and then at least obtain more time, if they're near to being out of time, from the judge, we used to call it in federal habeas, a placeholder petition. But more importantly, Your Honor, this is a creation of the legislature. How could you get more time if the judge has to look at it within 90 days? I mean, if you filed it without a 122-1 and it's there before the trial court and says, I couldn't get this because I couldn't find a notary, and you're saying then the trial court should just put it aside for however long until the person comes up with a notary? The trial judge, first of all, the trial judge could say it doesn't have to be a time issue. The trial judge could say, as in 122-2, okay, the defendant has explained why he could not, if it's a situation. And first of all, I would suggest that. That's kind of against your argument. Your argument is if that stamp isn't on there, we can't take these facts as true. And now you're saying if the defendant says, gee, I couldn't get a notary, please take the facts as true, that would be okay? I'm saying that perhaps the trial judge could say that he has at least said, like 122-2, that he can't. But more importantly, and my first argument would be no. I mean, it's tough to say if there are absolutely no circumstances where there's ever a notary available. I don't believe that's the circumstance in any of the prisons. But more importantly, going on to our last point, the statute is a creation of the legislature, and the legislature has laid this out. The legislature has said it has to be notarized. Well, but the legislature also has said that there's only one way to get rid of this at first stage. Do you agree with that? A finding within 90 days without input from the other side that it's frivolous or patently without merit. Would you agree with that? Yeah. Well, that's what the case law now says, yes. Okay, so that's what the case law says. So if that's the only way to get rid of it, you're saying that because it doesn't have a stamp on it, it could lay out the greatest constitutional violation you've ever seen in your life. If it doesn't have a stamp on it, the trial court says this is worthless and it's frivolous or patently without merit because there is not a notary stamp on it. That's right, and that's, I think, supported by Blair. Blair says, and that's one of the confusing things about Henderson. I mean, Henderson says some confusing things. First of all, they say, okay, well, the 122.1 requirement is not in 2.1. Therefore, we can't hold that it has anything to do with it. But then it goes on to admit that the 122-2 requirement is valid for a dismissal under 2.1. So where's that? What's the distinction? May I continue, Your Honor? Yes. They don't see the distinction there. More importantly, and this is very puzzling to me, they cite Blair. Cite Blair for the, and I want to get this right. Blair for the proposition, and this Blair is at 215 Millisecond 437, that in Blair, the court noted that the purpose of the renewal, the purpose of the change, and putting in 2.1 by the legislature, was so that post-convictions would move on only after a first-stage determination that it had merit. And Blair goes on to note that 122-2.1 ensures that the justice system, its system's limited resources are expended where they are most needed. In other words, and the court in Henderson said, oh, we don't believe that this is consistent with the intent of the act. Of course it is. The Supreme, first of all, the legislature said, and the Supreme Court said in Delphi, which this court cited in Carr, that failing to comply with the act can result in dismissal. And in Blair, they're making the point that the limited resources should only be used on those PCs which meet the requirements of the act. And I want to go on to something else they say in Blair, because it brings up something you said before, Justice Burke. You said, well, what if he lays out all the facts, and what if he makes the absolute best legal argument ever? Blair said, even otherwise meritorious claims are borrowed by res judicata and forfeiture. Even otherwise meritorious claims, it said that. In other words, and Blair, of course, is a question of the legal inherent component. But our argument is, in the same way, the factual inherent component also borrows going on. But Blair said that res judicata and forfeiture were encompassed within frivolous and pantomime without merit. Yes, they did. Right? Yes. Well, Clare said timeliness is not encompassed by frivolous or pantomime without merit. That's right. Okay. I mean, the fundamental thing is whether you look at it like Henderson did, which is, and you're taking Henderson to task, but if you look at this as a procedural defect, okay, as opposed to your argument, then it makes perfect sense what Henderson said. And that is that this is inconsistent, a car dismissal is inconsistent with the purposes of the act. We talk about the Supreme Court in Hodges saying the threshold for first-stage dismissals is low. And at the first stage, we're supposed to focus on the merits, not the procedure. That's from both Clare. That's from Hodges. I think even Blair said that. So, I mean, if you're looking at this as procedural in light of the Supreme Court case law, then Henderson makes perfect sense. I understand your argument is different. You're saying it's not procedural. It's substantive. Exactly. I mean, that's the rub. I mean, that's the difference right there. Exactly. And to go back to Blair, again, I said even otherwise meritorious claims are barred by res judicata and forfeiture. And counsel sort of made, well, in another context, a reference to, well, procedural has different aspects to it. But what is forfeiture, Your Honor? Forfeiture is a procedural default. Procedural. And yet the court in Blair said it goes to the inherent law component. And, therefore, it's proper to dismiss on these grounds at the first stage. Just because something's procedural doesn't mean that it doesn't affect the substance and doesn't have a substantive aspect to it. And you've hit the nail on the head, Your Honor. The people's belief is that Henderson was absolutely wrong in saying that this is just a technical procedural matter. It is important that the facts, and Blair says that, says we don't want the precious resource time wasted. Delton says it's okay to dismiss when the requirements of the act are not followed. The pleading, the verification requirement goes to the truth of the allegations and goes to whether they're brought in good faith. That is an inherent component of a post-conviction petition. For those reasons, Your Honor, we would ask this court to affirm the judgment below. Okay. Thank you. Do you wish to reply? I think the difference, one of the differences between what was being addressed in Blair and what we have before us here is that if a claim is forfeited, if a claim is rejudicata, then it really has, there is a law of the case, a rule of the case that has been made on the point. If it is forfeited, then that means that some attorney somewhere along the way did not raise it, and it could be framed in another filing as ineffective assistance. It's not absolutely gone forever. Again, I think that our legislature wasn't. But here, if the petition is dismissed for lack of verification, it isn't gone forever. The defendant can file a successive post-conviction. Yes, but then he'll have to explain his thing, and I don't know if it's economically a good way for us to use our resources. No, I'm just responding to your point that, well, if it's forfeited, it's really not gone forever. If it's dismissed because it wasn't verified, it's not gone forever either. That's true, that's true. But my point about Blair, though, is that I believe that's part of where the substance of the, it occurs to me that if something is rejudicata or forfeited, as Blair held, it is plainly, plainly problematic. There is plainly a bar to granting relief, and it's going to have to be reframed or whatever. What is happening here, what we need to do is to get back to the language of 122-2.1, which clearly only authorizes the court within 90 days to make the analysis of whether or not it is frivolous. And that's just the key here. But counsel says that this issue is encompassed within frivolous and without merit. That's the point that we're arguing on, I think. And my position on that is simply there are the practical obstacles to being able to get things verified and to being able to have things in proper legal form. But there is also the fact that it's not as though these things will not ever be addressed. They are more appropriately addressed at the second stage. If you look at the Act as a whole, there is no affirmative indication that the legislature intended procedure to be addressed by the court during the 2.1 examination. But the Act says that you have to comply with the Act. Yes, and overall, at some point, but what we're doing is looking at stages. So your position is that a first-stage petition does not have to be verified? As long as it's verified at some point before relief is granted, that's good enough. That's right. Do we have any other questions? Okay, we will be in recess until 11.30. Thank you. Thank you very much.